UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| AHMED SOUEIDAN, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) No. 4:17-CV-2777 RLW |
| | ) |
| v. | ) |
| | ) |
| SAINT LOUIS UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Saint Louis University's Motion to Dismiss Plaintiff's Complaint (ECF No. 14). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Ahmed Soueidan ("Soueidan") was enrolled as a doctoral student at Saint Louis University ("SLU") in the Parks College of Engineering, Aviation and Technology in 2012. (Complaint ("Compl."), ECF No. 1, ¶¶1, 7). SLU represented to Soueidan that he would earn his Ph.D. in mechanical aerospace engineering in four years. (Compl., ¶8). Soueidan met with the department chair in August 2012, and together they drafted a plan for Soueidan to graduate with his doctoral degree in four years. (Compl., ¶9). Soueidan, however, was unable to find a Ph.D advisor who had research or funding to supervise his graduate studies. (Compl., ¶10). In December 2013, Professor Raymond Lebeau ("Lebeau") agreed to act as Soueidan's Ph.D.

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

advisor. (Compl., ¶12). Lebeau indicated that he could get Soueidan through the program in two more years, even though he had no research or funding for him. (Compl., ¶12). Due to Lebeau's uncertainty regarding the requisite qualifying examination for Soueidan, Lebeau referred Soueidan to the SLU Graduate Student Handbook ("the Handbook"). (Compl., ¶13). Professor Lebeau later told Soueidan to disregard the Handbook. (*Id.*).

In August 2014, the graduate coordinator, graduate programs assistant, department chair (who drafted Soueidan's plan of study), and several professors within the department, left SLU simultaneously. (Compl., ¶14). By August 2015, the graduate programs' assistant and the Dean of the College of Engineering left their positions. (*Id.*). As of then, Soueidan had completed ten graduate-level courses to fulfill the course credits requirement for his Ph.D., as stated in the Handbook. (*Id.*).

In June 2015, Lebeau told Soueidan that he needed to attend a conference to prepare for his qualifying examination. Lebeau and Soueidan attended the AIAA SciTech 2016 conference in San Diego, California, where Soueidan presented his thesis work. (Compl., ¶15). In May 2016, Soueidan met with the graduate coordinator and Lebeau to discuss preparing for Soueidan's qualifying examination. (Compl., ¶16). A few months later, after Soueidan's practice examination, Lebeau told Soueidan that two of the committee members said Soueidan would not pass his examination. (Compl., ¶16). A third committee member said he would have passed Soueidan. (Compl., ¶16).

In August 2016, Soueidan took the actual qualifying examination. (Compl., ¶17). One committee member told Soueidan before the examination that he did not follow the guidelines for writing his paper and questioned his preparedness for the examination. (*Id.*) After Soueidan did not pass the examination, Soueidan was instructed to take another written examination and

- 2 -

perform additional course work. (Compl., ¶18). In the fall of 2016, Soueidan downgraded to a Master's degree after over four years in the Ph.D. program. (Compl., ¶19).

Soueidan refers to several sections of the Handbook that he claims were not followed during his matriculation through the Ph.D. program:

- "You should have an advisor assigned within the first few weeks of classes starting." (Compl., ¶27).
- Students are to meet with their advisor in January to complete their Annual Student Review. This review provides an opportunity to "have a review of [his] work completed, create goals for the next year of studies and research, and ensure you are staying on track for graduation." (Compl., ¶29).
- For Engineering students, the Qualifying Exam is scheduled after 2 semesters," and that "[t]he Qualifying Exam is designed to determine if the student is prepared to continue Ph.D studies and carry on with research." (Compl., ¶31).

The 2015-2016 SLU Graduate Education Catalog ("the Catalog") indicates that the Parks College of Engineering has a Ph.D. program. (Compl., ¶22). Soueidan alleges, "[h]owever, in practice, students who register for the SLU College of Engineering Ph.D. program are faced with insurmountable hurdles that make it essentially impossible to actually obtain a Ph.D." (Compl., ¶34). Soueidan states that he has been damaged by nearly $200,000.00 in tuition payments, the difference in the value of a Ph.D. over his career, and the loss of four years or more of his career. (Compl., ¶¶36, 42, 43).

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### II. Discussion

#### A. Educational Malpractice

Soueidan purports to allege a breach of contract claim against SLU. "'In order to make a submissible case of breach of contract, the complaining party must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach.'" *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013) (citing *C. Am. Health Sciences Univ., Belize Med. College v. Norouzian,* 236 S.W.3d 69, 84 (Mo. Ct. App. 2007) (internal citation omitted)). Soueidan states that he has alleged a valid contract (both express and implied). (ECF No. 16 at 6). Soueidan alleges that SLU, in exchange for tuition, promised Soueidan a course of study that would yield a doctorate in mechanical and aerospace engineering. (ECF No. 16 at 7). The alleged terms of the contract were derived from SLU's Handbook, Catalog, "policies and procedures," and the specific course of study SLU's Department chair drafted in August of 2012. (ECF No. 16 at 7). Soueidan alleged SLU breached its contract with Soueidan by

> inter alia, (1) failing to timely provide the services of a Ph.D. advisor to … Soueidan within the first few weeks of him starting the program pursuant to the official policy to set forth in its handbook; (2) failing to timely provide an advisor to meet with … Soueidan in January each year to compete an Annual Student Review altering … Soueidan as to his progress or the timing for other necessary requirements to complete his degree; (3) failing to timely schedule the Qualifying Examination; and (4) failing to award … Soueidan the doctorate degree he was promised after … Soueidan complied with Defendant's directive and completed the course of study laid out by SLU.

(ECF No. 16 at 7 (citing Compl., ¶¶37-39)).

Soueidan also attempts to assert a claim for breach of the contract of good faith and fair dealing. Missouri law implies a duty of good faith and fair dealing in every contract. *Countrywide Servs. Corp. v. SIA Ins. Co.*, 235 F.3d 390, 393 (8th Cir. 2000) (citing *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 410 (Mo. Ct. App. 1996); *Slone v. Purina Mills Inc.*, 927 S.W.2d 358, 368 (Mo. Ct. App. 1996)). This implied duty "prevents one party to a contract to [sic] exercise a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract." *Acetylene Gas*, 939 S.W.2d at 410. Put another way, "[i]t is the duty of one party to a contract to cooperate with the other to enable performance and achievement of the expected benefits." *Slone*, 927 S.W.2d at 368. Soueidan asserts that SLU breached the contract of good faith and fair dealing when it failed to provide the promised course of study and resources necessary to complete his Ph.D. (ECF No. 16 at 8).

Soueidan asserts that his claims are not barred by the educational malpractice doctrine because he has alleged that SLU failed to provide specifically promised educational services. In turn, SLU maintains that all of Plaintiff's claims invoke the educational malpractice doctrine and require dismissal.

In *Gillis v. Principia Corporation*, the Eighth Circuit recognized that Missouri has adopted the educational malpractice doctrine. *Id.*, 832 F.3d 865, 872 (8th Cir. 2016).

"Generally, courts have refrained from recognizing educational malpractice claims, either in tort or contract, on the premise that '[u]niversities must be allowed the flexibility to manage themselves and correct their own mistakes.'" *Lucero*, 400 S.W.3d at 8 (alteration in original) (quoting *Miller v. Loyola Univ. of New Orleans*, 829 So.2d 1057, 1061 (La. Ct. App. 2002)). "Missouri ... has found that educational malpractice claims are not cognizable because there is no duty." *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 699 (Mo. Ct. App. 2008) (citations omitted). "In refusing to recognize a claim for educational malpractice, [Missouri courts have] emphasized that it is not [the court's] place to micromanage a university's daily operations." *Lucero*, 400 S.W.3d at 8 (citing *Dallas Airmotive*, 277 S.W.3d at 700). A breach-of-contract claim that "'raises questions concerning the reasonableness of the educator's conduct in providing educational services' ... 'is one of educational malpractice,' which Missouri courts have recognized as a non-cognizable claim." *Id.* (quoting *Dallas Airmotive*, 277 S.W.3d at 700).

To determine whether Soueidan has stated a breach-of-contract claim, the Court must necessarily identify the promises that Soueidan relies upon and determine whether these purported promises create rights and obligations on SLU's behalf. *Gillis*, 832 F.3d at 872. The Court must decide whether the trier of fact would have to inquire into the nuances of educational processes and theories in order to determine whether the alleged representations were false. *Blake v. Career Educ. Corp.*, No. 4:08CV00821ERW, 2009 WL 2567011, at *5 (E.D. Mo. Aug. 18, 2009). The Court holds that, under Soueidan's claims, it would have to determine whether SLU timely assigned a Ph.D. advisor, conducted a student review, and scheduled the qualifying examination and how those decisions affected Soueidan's matriculation. Likewise, the Court would have to analyze whether SLU breached its contract by "failing to award ... Soueidan the

Ph.D. degree he was promised after completing all directives and 5 years of requisite coursework." (ECF No. 16 at 13 (citing (Compl., ¶39)). In particular, this allegation would require the Court to address not only the quality of the Ph.D. program but also whether Soueidan comprehensively and adequately completed all of his coursework. The Court holds that such an examination would ultimately require the Court to become entangled in a disputes "over the pedagogical methods employed," *Dallas Airmotive,* 277 S.W.3d at 700, and would "involve an inquiry into the nuances of educational processes and theories." *Blake,* 2009 U.S. Dist. LEXIS 72167, at *6, 2009 WL 2567011; *Love v. Career Educ. Corp.,* No. 4:11CV1585 JAR, 2012 WL 1684572, at *2 (E.D. Mo. May 15, 2012). As a result, the Court holds that Soueidan's claims are barred by the educational malpractice doctrine.

### B. Contractual Promises Allegedly Relied Upon by Soueidan

As another basis for dismissing this action, the Court holds that Soueidan's breach of contract claim and breach of the covenant of good faith and fair dealing claims cannot stand based upon the timing of this action and of the alleged discrete, contractual promises relied upon by Soueidan. That is, SLU claims that Soueidan has failed to allege and the Court "cannot identify any 'contractual' promise that [SLU] has failed to honor." *Nickel v. Stephens Coll.,* 480 S.W.3d 390, 397 (Mo. Ct. App. 2015). Soueidan has alleged that "[b]y admitting ... Soueidan and accepting his tuition payments, Defendant has an express and implied contract with ... Soueidan in connection with rights explicitly guaranteed by SLU pursuant to the Handbook and also the Catalog." (Compl., ¶38; *see also* ECF No. 16 at 8 (Soueidan specifically alleged that "both an implied and express contract was formed when he paid his tuition and fees in return for educational services")). Soueidan was admitted and accepted into the Ph.D. program in 2012, which is when the alleged contract would have been formed. Soueidan bases his claims upon

- 7 -

specific statements in the Handbook and Catalog. Soueidan, however, alleges that he received all of these alleged promises after his 2012 contract with SLU was formed. He first reviewed the Handbook in December 2013. Similarly, he bases his claims on promises contained in the 2015-2016 Catalogue. Thus, Soueidan could not have relied upon these promises in the Handbook and Catalog when he enrolled in the Ph.D. program in 2012. Soueidan's claims for breach of contract and for breach of the covenant of good faith and fair dealing fail as a matter of law because he has failed to identify any promises that he relied upon when he enrolled in 2012.

## C. Fraudulent Misrepresentation

Under Missouri law, to state a claim for fraudulent misrepresentation, a plaintiff must plead: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Arthur v. Medtronic, Inc.*, 123 F. Supp. 3d 1145, 1149 (E.D. Mo. 2015) (citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 131–32 (Mo. 2010)).

SLU claims that Soueidan cannot be permitted to restate his breach of contract claim as a fraud claim. (ECF No. 15 at 12-13 (citing *RehabCare Grp. E., Inc. v. Future Focus of U-City, LLC*, No. 4:12CV1509 JCH, 2012 WL 5994295, at *3 (E.D. Mo. Nov. 30, 2012)). SLU asserts that the source of the duty that Soueidan alleges SLU violated under his fraud claim "arises from what Soueidan pleads is part of his contract with the University." (ECF No. 15 at 13). Soueidan pleaded in his fraud claim that "the 2015-2016 SLU Graduate Education Catalog falsely

- 8 -

indicates on page 111 that students may obtain a Ph.D. degree there." (Compl., ¶52). SLU maintains that "[b]ecause Soueidan alleges that the source of his fraud claim (i.e. the purported false statement that students may obtain a Ph.D. degree at the University) is rooted in the Catalog that he pleads is part of the contract, his fraud claim fails as a matter of law." (ECF No. 15 at 13).

Soueidan claims that he has properly identified the relevant "who, what, when where, and how" of the alleged fraud. Specifically, Soueidan states that he alleged that Defendant's representations of a Ph.D. program in mechanical and aerospace engineering in its Catalog were false. (ECF No. 16 at 9 (citing Compl., ¶52)). Soueidan further states that SLU made the representations with the intent that Soueidan would rely on its representations when deciding whether to attend SLU and pay tuition. (Comp., ¶¶53-56).

The Eighth Circuit has held that "[a] fraud claim *independent of the contract* is actionable, but it must be based upon a misrepresentation that was *outside of or collateral to the contract,* such as many claims of fraudulent inducement. That distinction has been drawn by courts applying traditional contract and tort remedy principles." *AKA Distrib. Co. v. Whirlpool Corp.,* 137 F.3d 1083, 1086 (8th Cir.1998) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19–20 (2d Cir.1996); *Kee v. Nat'l Reserve Life Ins. Co.,* 918 F.2d 1538, 1543 (11th Cir.1990); *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.,* 952 F.Supp. 120, 122–23 (N.D.N.Y.1997)) (emphasis added); *Compass Bank v. Eager Rd. Assocs., LLC,* 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013). The Court holds that Soueidan has failed to allege a fraud that is independent of his contract action. Rather, his fraud claim is based upon the same promises and actions that he alleged to support his breach of contract claim. As a result, the Court holds that Soueidan's fraud claim fails as a matter of law.

**D. Leave to Amend**

As a last ditch effort, Soueidan argues that Rule 15(a) requires this Court allow him to amend his Complaint, rather than dismiss it in absence of substantial reasons. (ECF No. 16 at 14). SLU asks this Court to deny Soueidan's request for leave to amend because amendment would be futile. (ECF No. 17 at 10).

The Court denies Soueidan's request to file an amended complaint because he has failed to provide a proposed amendment along with his request. "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed.R.Civ.P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir.2005). "[I]n order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion." *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir.1985). "The Eighth Circuit has repeatedly held that district courts do not abuse their discretion in denying leave to amend where the plaintiff did not file a motion for leave to amend and submit a proposed amended complaint, and merely asked for leave to amend in its response to a motion to dismiss." *Tracy v. SSM Cardinal Glennon Children's Hosp.*, No. 4:15-CV-1513 CAS, 2016 WL 3683000, at *16 (E.D. Mo. July 12, 2016) (citing *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 n.4 (8th Cir. 2013); *Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011); *In re 2007 Novastar Financial, Inc., Secs. Litig.*, 579 F.3d 878, 884-85 (8th Cir. 2009); *Clayton*, 778 F.2d at 460). Soueidan has failed to file a motion for leave to file an amended complaint and has failed to provide a proposed amended complaint. Because Soueidan has failed to follow this critical procedural step, his request is denied. *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009).

Accordingly,

**IT IS HEREBY ORDERED** that Saint Louis University's Motion to Dismiss Plaintiff's Complaint (ECF No. 14) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 27th day of April, 2018.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**